The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

ANGELA RUTH, on behalf of herself and all others similarly situated,

    Plaintiff,

v.

TIMBERLAND BANK,

    Defendant.

No. 3:22-cv-05385-BHS

FIRST AMENDED CLASS ACTION COMPLAINT

JURY DEMAND

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Angela Ruth, by and through her counsel of record, for its class action complaint against Defendant Timberland Bank, alleges as follows:

**INTRODUCTION**

1. Plaintiff brings this action individually and on behalf of all similarly situated consumers against Defendant Timberland Bank ("Bank"), arising from its routine practice of assessing an overdraft fee ("OD Fee") on transactions that did not actually overdraw checking accounts.

2. Timberland Bank's customers have been injured by the Bank's improper practices to the tune of millions of dollars bilked from their accounts in violation Timberland Bank's clear contractual commitments.

FIRST AMENDED CLASS ACTION COMPLAINT - 1
3:22-cv-05385-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

3.  Plaintiff, on behalf of herself and a Class of similarly situated consumers, seeks to end Timberland Bank's abusive and predatory practices and force it to refund all of these improper charges. Plaintiff asserts a claim for breach of contract, including breach of the covenant of good faith and fair dealing, and seeks damages, restitution, and injunctive relief, as set forth more fully below.

4.  While there is nothing unlawful about assessing OD Fees on accounts when such fees are assessed in compliance with contractual terms, OD Fees in general have a crushing impact on persons living paycheck to paycheck. This is why the financial services industry is increasingly moving away from such fees.

5.  For example, one of the nation's largest consumer banks, Ally Bank recently stopped assessing overdraft fees altogether. Diane Morais, Ally Bank's president of consumer and commercial banking, said that one reason is because OD Fees disproportionately affect people who are living paycheck to paycheck and that OD Fees disproportionately affect Black and Latino households. *Overdraft Fees Are Getting the Boot at Ally Financial*, The Wall Street Journal (June 2, 2021), https://www.wsj.com/articles/overdraft-fees-are-getting-the-boot-at-ally-financial-11622631600 (last accessed June 4, 2021).

6.  Indeed, Black households and those with low-to-moderate incomes are almost twice as likely to incur OD Fees as white households or those with higher incomes, according to a report from the Financial Health Network, a research firm partly funded by financial institutions.

## JURISDICTION

7.  The Superior Court of Washington has jurisdiction over the subject matter of this action pursuant to the Washington Constitution, Article IV, Section 6, and RCW 2.08.010.

FIRST AMENDED CLASS ACTION COMPLAINT - 2
3:22-cv-05385-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

8. Although disputed by Plaintiff, Defendant contends this Court has jurisdiction over the subject matter of this action based on Defendant's Notice of Removal [ECF No. 1] pursuant to 28 U.S.C. §§ 1334 and 1452 on the grounds that the action is related to former Plaintiff Cheryl Rieken's bankruptcy proceeding. Concurrently with the filing of this Amended Complaint, which removes Ms. Rieken as Plaintiff and substitutes Ms. Ruth as Plaintiff, Plaintiff Ruth will move to remand.

9. The Superior Court of Washington has personal jurisdiction over Defendant because Timberland Bank is a resident of the State of Washington and engages in continuous business providing financial services to Washington citizens.

10. Venue is proper in Pierce County, Washington pursuant to RCW 4.12.020(3) and pursuant to RCW 4.12.025(1) because Defendant transacts business and has an office for the transaction of business in Pierce County.

11. The claims of the named Plaintiff and of the members of the Class are brought under state law claims for relief. No federal question exists in this matter.

12. Federal jurisdiction is inappropriate under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(4)(B), because two-thirds or more of the members of the proposed plaintiff class in the aggregate are citizens of the state of Washington, as is Timberland Bank, the defendant.

## PARTIES

13. Plaintiff Angela Ruth is a natural person who is a citizen of Washington and resides in Elma, Grays Harbor County, Washington and has had a checking account with Timberland Credit Union at all times material hereto.

14. Defendant Timberland Bank is a bank with over $1.69 billion in assets. Timberland Bank is headquartered in Hoquiam, Washington and maintains branch locations

FIRST AMENDED CLASS ACTION COMPLAINT - 3
3:22-cv-05385-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

across the state of Washington, including in Pierce County.

## **FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

## **DEFENDANT CHARGES OD FEES ON TRANSACTIONS THAT DO NOT ACTUALLY OVERDRAW THE ACCOUNT**

15. Plaintiff has a checking account with Defendant.

16. Defendant issues debit cards to its checking account customers, including Plaintiff, which allows its customers to have electronic access to their checking accounts for purchases, payments, withdrawals, and other electronic debit transactions.

17. Pursuant to its Account Documents, Defendant charges fees for transactions that purportedly result in an overdraft.

18. Plaintiff brings this cause of action challenging Defendant's practice of charging OD Fees on what are referred to in this complaint as "Authorize Positive, Purportedly Settle Negative Transactions" ("APPSN Transactions").

19. Here's how it works. At the moment debit card transactions are authorized on an account with positive funds to cover the transaction, Defendant immediately reduces account holders' checking accounts by the amount of the purchase, sets aside funds in a checking account to cover that transaction, and as a result, the accountholder's displayed "available balance" reflects that subtracted amount. Therefore, customers' accounts will always have sufficient available funds to cover these transactions because Defendant has already sequestered these funds for payment.

20. However, Defendant still assesses crippling OD Fees on many of these transactions and mispresents its practices in its Account Documents.

21. Despite putting aside sufficient available funds for debit card and other POS transactions at the time those transactions are authorized, Defendant later assesses OD Fees on

FIRST AMENDED CLASS ACTION COMPLAINT - 4
3:22-cv-05385-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

those same transactions when they purportedly settle days later into a negative balance. These types of transactions are APPSN Transactions.

22. Defendant maintains a running account balance in real time, tracking funds accountholders have for immediate use. This running account balance is adjusted, in real-time, to account for debit card transactions at the precise instance they are made. When a customer makes a purchase with a debit card, Defendant sequesters the funds needed to pay the transaction, subtracting the dollar amount of the transaction from the customer's available balance. Such funds are not available for any other use by the accountholder, and such funds are specifically associated with a given debit card transaction.

23. That means when any *subsequent*, intervening transactions are initiated on a checking account, they are compared against an account balance that has already been reduced to account for any earlier debit card transactions. This means that many subsequent transactions incur OD Fees due to the unavailability of the funds sequestered for those debit card transactions.

24. Still, despite keeping those held funds off-limits for other transactions, Defendant improperly charges OD Fees on those APPSN Transactions, even though the APPSN Transactions *always* have sufficient available funds to be covered.

25. Indeed, the Consumer Financial Protection Bureau ("CFPB") has expressed concern with this very issue, flatly calling the practice "unfair" and/or "deceptive" when:

> A financial institution authorized an electronic transaction, which reduced a customer's available balance but did not result in an overdraft at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted as an overdraft and an additional overdraft fee was charged. Because such fees caused harm to consumers, one or more supervised entities were found to have acted unfairly when they charged fees in the manner described above. Consumers likely had no reason to anticipate this practice, which was not appropriately

FIRST AMENDED CLASS ACTION COMPLAINT - 5
3:22-cv-05385-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

disclosed. They therefore could not reasonably avoid incurring the overdraft fees charged. Consistent with the deception findings summarized above, examiners found that the failure to properly disclose the practice of charging overdraft fees in these circumstances was deceptive. At one or more institutions, examiners found deceptive practices relating to the disclosure of overdraft processing logic for electronic transactions. Examiners noted that these disclosures created a misimpression that the institutions would not charge an overdraft fee with respect to an electronic transaction if the authorization of the transaction did not push the customer's available balance into overdraft status. But the institutions assessed overdraft fees for electronic transactions in a manner inconsistent with the overall net impression created by the disclosures. Examiners therefore concluded that the disclosures were misleading or likely to mislead, and because such misimpressions could be material to a reasonable consumer's decision-making and actions, examiners found the practice to be deceptive. Furthermore, because consumers were substantially injured or likely to be so injured by overdraft fees assessed contrary to the overall net impression created by the disclosures (in a manner not outweighed by countervailing benefits to consumers or competition), and because consumers could not reasonably avoid the fees (given the misimpressions created by the disclosures), the practice of assessing fees under these circumstances was found to be unfair.

Consumer Financial Protection Bureau, Winter 2015 "Supervisory Highlights."

26. There is no justification for these practices, other than to maximize Defendant's OD Fee revenue. APPSN Transactions only exist because intervening checking account transactions supposedly reduce an account balance. But Defendant is free to protect its interests and either reject those intervening transactions or charge OD Fees on those intervening transactions—and it does the latter to the tune of millions of dollars each year. But Defendant was not content with these millions in OD Fees. Instead, it sought millions *more* in OD Fees on these APPSN Transactions.

27. Besides being unfair and unjust, these practices breach contract promises made in Defendant's adhesion contracts—contracts which fail to inform accountholders about the true nature of Defendant's processes and practices. These practices also exploit contractual discretion to gouge accountholders.

3:22-cv-05385-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

28. In plain, clear, and simple language, the Account Documents covering OD Fees promise that Defendant will only charge OD Fees on transactions that have insufficient funds to cover that transaction.

29. In short, Defendant is not authorized by contract to charge OD Fees on transactions that have not overdrawn an account, but it has done so and continues to do so.

### A. Mechanics of a Debit Card Transaction

30. A debit card transaction occurs in two parts. First, authorization for the purchase amount is instantaneously obtained by the merchant from Defendant. When a merchant physically or virtually "swipes" a customer's debit card, the credit card terminal connects, via an intermediary, to Defendant, which verifies that the customer's account is valid and that sufficient available funds exist to cover the transaction amount.

67. At this step, if the transaction is approved, Defendant immediately decrements the funds in an accountholder's account and sequesters funds in the amount of the transaction but does not yet transfer the funds to the merchant.

68. Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 29, 2009).

FIRST AMENDED CLASS ACTION COMPLAINT - 7
3:22-cv-05385-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

69. Sometime thereafter, the funds are actually transferred from the customer's account to the merchant's account.

70. Defendant (like all banks and credit unions) decides whether to "pay" debit card transactions at authorization. After that, Defendant is obligated to pay the transaction no matter what. For debit card transactions, that moment of decision can only occur at the point of sale, at the instant the transaction is authorized or declined. It is at that point—and only that point—when Defendant may choose to either pay the transaction or decline it. When the time comes to actually settle the transaction, it is too late—the financial institution has no discretion and must pay the charge. This "must pay" rule applies industry wide and requires that, once a financial institution authorizes a debit card transaction, it "must pay" it when the merchant later makes a demand, regardless of other account activity. *See* Electronic Fund Transfers, 74 Fed. Reg. 59033-01, 59046 (Nov. 17, 2009).

71. There is no change—no impact whatsoever—to the available funds in an account when this step occurs.

**B.    *Defendant's Account Contract***

72. Plaintiff has a checking account with Defendant, which is governed by Defendant's standardized Account Documents.

73. The Account Documents indicate that Timberland Bank will only pay overdrafts when an accountholder lacks sufficient funds to pay for a transaction.

74. For APPSN Transactions, which are immediately deducted from a positive account balance and should be held aside for payment of that same transaction, there are always funds to cover those transactions—yet Timberland Bank assesses OD Fees on them anyway.

FIRST AMENDED CLASS ACTION COMPLAINT - 8
3:22-cv-05385-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

75. The above promises mean that transactions are only overdraft transactions when they are authorized into a negative account balance. Of course, that is not true for APPSN Transactions.

76. APPSN transactions are always initiated at a time when there are sufficient available funds in the account.

77. In fact, Timberland Bank actually authorizes transactions on positive funds, claims to set those funds aside on hold, but then fails to use those same funds to settle those same transactions. Instead, it uses a secret posting process described below.

78. All the above representations and contractual promises are untrue. In fact, Timberland Bank charges OD Fees even when sufficient funds exist to cover transactions that are authorized into a positive balance. No express language in any document states that Timberland Bank may impose OD Fees on any APPSN Transactions.

79. First, and most fundamentally, Timberland Bank charges OD Fees on debit card transactions for which there are sufficient funds available to cover the transactions. That is despite contractual representations that Timberland Bank will only charge OD Fees on transactions with insufficient available funds to cover a given transaction.

80. Timberland Bank assesses OD Fees on APPSN Transactions that ***do*** have sufficient funds available to cover them throughout their lifecycle.

81. Timberland Bank's practice of charging OD Fees even when sufficient available funds exist to cover a transaction violates a contractual promise not to do so. This discrepancy between Timberland Bank's actual practice and the contract causes accountholders like the Plaintiff to incur more OD Fees than they should.

FIRST AMENDED CLASS ACTION COMPLAINT - 9
3:22-cv-05385-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

82. Next, sufficient funds for APPSN Transactions are actually debited from the account immediately, consistent with standard industry practice.

83. Because these withdrawals take place upon initiation, they cannot be re-debited later. But that is what Timberland Bank does when it re-debits the account during a secret batch posting process.

84. In reality, Timberland Bank's actual practice is to deduct the same debit card transaction twice to determine if the transaction overdraws an account—both at the time a transaction is authorized and later at the time of settlement.

85. At the time of settlement, however, an available balance *does not change at all* for these transactions previously authorized into good funds. As such, Timberland Bank cannot then charge an OD Fee on such transaction because the available balance has not been rendered insufficient due to the pseudo-event of settlement.

86. Upon information and belief, something more is going on: at the moment a debit card transaction is getting ready to settle, Timberland Bank does something new and unexpected, during the middle of the night, during its nightly batch posting process. Specifically, Timberland Bank releases the hold placed on funds for the transaction for a split second, putting money back into the account, then re-debits the same transaction a second time.

87. This secret step allows Timberland Bank to charge OD Fees on transactions that never should have caused an overdraft—transactions that were authorized into sufficient funds, and for which Timberland Bank specifically set aside money to pay them.

88. This discrepancy between Timberland Bank's actual practices and the contract causes accountholders to incur more OD Fees than they should.

FIRST AMENDED CLASS ACTION COMPLAINT - 10
3:22-cv-05385-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

89. In sum, there is a huge gap between Timberland Bank's practices as described in the Account Documents and Timberland Bank's practices in reality.

### C. Defendant Abuses Contractual Discretion

90. Defendant's treatment of debit card transactions to charge OD Fees is not simply a breach of the express terms of the numerous Account Documents. In addition, Defendant exploits contractual discretion to the detriment of accountholders when it uses these policies.

91. Defendant uses its contractual discretion to cause APPSN Transactions to incur OD Fees by knowingly authorizing later transactions that it allows to consume available funds previously sequestered for APPSN Transactions.

92. Defendant uses this contractual discretion unfairly to extract OD Fees on transactions that no reasonable accountholder would believe could cause OD Fees.

### D. Reasonable Accountholders Understand Debit Card/POS Transactions Are Debited Immediately

93. The assessment of OD Fees on APPSN Transactions is fundamentally inconsistent with immediate deduction and holding of funds for debit card/POS transactions. That is because, if funds are immediately debited from the balance and held, they cannot be depleted by intervening transactions (and it is that subsequent depletion that is the necessary condition of APPSN Transactions). If funds are immediately debited from the available balance, then they are necessarily available to be applied to the debit card transactions for which they are debited.

94. Defendant was and is aware that this is precisely how accountholders reasonably understand such transactions to work.

95. Defendant knows that many accountholders prefer debit cards for this very reason. Research indicates that accountholders prefer debit cards as a budgeting device because they do

FIRST AMENDED CLASS ACTION COMPLAINT - 11
3:22-cv-05385-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

not allow debt like credit cards do, and because the money comes directly out of a checking account.

96. Consumer Action, a national nonprofit consumer education and advocacy organization, advises consumers determining whether they should use a debit card that "[t]here is no grace period on debit card purchases the way there is on credit card purchases; the money is immediately deducted from your checking account. Also, when you use a debit card you lose the one or two days of 'float' time that a check usually takes to clear." *What Do I Need to Know About Using a Debit Card?*, Consumer Action (Jan. 14, 2019), https://www.consumer-action.org/helpdesk/articles/what_do_i_need_to_know_about_using_a_debit_card (last visited June 4, 2021).

97. Further, Consumer Action informs consumers that "Debit cards offer the convenience of paying with plastic without the risk of overspending. When you use a debit card, you do not get a monthly bill. You also avoid the finance charges and debt that can come with a credit card if not paid off in full." *Understanding Debit Cards*, Consumer Action, http://www.consumer-action.org/english/articles/understanding_debit_cards (last visited June 4, 2021).

98. This understanding is a large part of the reason that debit cards have risen in popularity. The number of terminals that accept debit cards in the United States increased by approximately 1.4 million in a recent five year period and, with that increasing ubiquity, consumers have (along with credit cards) viewed debit cards "as a more convenient option than refilling their wallets with cash from an ATM." Maria LaMagna, *Debit Cards Gaining on Case for Smallest Purchases*, MarketWatch, Mar. 23, 2016, http://www.marketwatch.com/story/more-people-are-using-debit-cards-to-buy-a-pack-of-gum-2016-03-23.

FIRST AMENDED CLASS ACTION COMPLAINT - 12
3:22-cv-05385-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

99. Not only have accountholders increasingly transitioned from cash to debit cards, but they believe that a debit card purchase is the fundamental equivalent of a cash purchase, with the swipe of a card equating to handing over cash, permanently and irreversibly.

100. Defendant was aware of accountholder perception that debit transactions reduce an available balance *in a specified order*—namely, the moment they are actually initiated—and its account agreement only supports this perception.

### E. Plaintiff's Experience

101. As examples, on February 14, 2018, July 23, 2018, October 5, 2018, October 9, 2018, November 7, 2018 and March 25, 2019, Plaintiff was assessed OD Fees for debit card transactions that settled that day, despite the fact that positive funds were deducted immediately, prior to that day, for the transaction on which Plaintiff was assessed the OD Fee. At the time that the positive funds were deducted, Plaintiff had a positive balance, which would not have caused an OD Fee.

## CLASS ACTION ALLEGATIONS

102. Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

103. The proposed class is defined as:

> All Timberland Bank checking account holders in the state of Washington who, during the applicable statute of limitations, were charged OD Fees on transactions that were authorized into a positive available balance (the "Class").

104. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

FIRST AMENDED CLASS ACTION COMPLAINT - 13
3:22-cv-05385-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

105. Excluded from the Class are Timberland Bank, its parents, subsidiaries, affiliates, officers and directors, any entity in which Timberland Bank has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

106. The members of the Class are so numerous that joinder is impractical. The Class consists of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Timberland Bank's records.

107. The claims of Plaintiff are typical of the claims of the Class in that she, like all Class members, was charged improper OD Fees. Plaintiff, like all Class members, has been damaged by Timberland Bank's misconduct in that she paid improper OD Fees. Furthermore, the factual basis of Timberland Bank's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class.

108. There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.

109. Among the questions of law and fact common to the Class are whether Timberland Bank:

    a. Charged OD Fees on transactions when those transactions did not overdraw accounts;

    b. Breached its contract with consumers by charging OD Fees on transactions when those transactions did not overdraw accounts;

    c. Breached the covenant of good faith and fair dealing by charging OD Fees on transactions when those transactions did not overdraw accounts;

FIRST AMENDED CLASS ACTION COMPLAINT - 14
3:22-cv-05385-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

         d.         Whether Plaintiff and the Class were damaged by Defendant's conduct and if so, the proper measure of damages.

110.    Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

111.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Timberland Bank, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Timberland Bank's misconduct will proceed without remedy. Moreover, given that the improper fees were assessed in a uniform manner, common issues predominate over any questions, to the extent there are any, affecting only individual members.

112.    Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

FIRST AMENDED CLASS ACTION COMPLAINT - 15
3:22-cv-05385-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

# FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
**(On Behalf of Plaintiff and the Class)**

113. The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

114. Plaintiff and Timberland Bank have contracted for bank account deposit, checking, ATM, and debit card services. That contract did not permit Timberland Bank to charge OD Fees on transactions that do not actually overdraw an account.

115. Further, under the laws of Washington, good faith is an element of every contract, including the instant Account Documents pertaining to the assessment of OD Fees. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

116. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A failure to act in good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of violations of good faith and fair dealing include evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

FIRST AMENDED CLASS ACTION COMPLAINT - 16
3:22-cv-05385-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

117. Timberland Bank has breached the covenant of good faith and fair dealing in its contract with customers by charging OD Fees on transactions that do not actually overdraw the account *i.e.* when there were sufficient actual funds in the account to cover the transaction.

118. Timberland Bank also breached the express terms of its contract with Plaintiff and the APPSN Class by charging OD Fees on transactions that do not actually overdraw the account *i.e.* when there were sufficient actual funds in the account to cover the transaction.

119. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

120. Plaintiff and members of the Class have sustained damages as a result of Timberland Bank's breach of the contract.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF WASHINGTON'S CONSUMER PROTECTION ACT**
**(On Behalf of Plaintiff and the Class)**

121. The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

122. Plaintiff asserts this claim on behalf of herself and on behalf of the Class who are Washington citizens and enjoy the protections of Unfair Business Practices Act—Consumer Protection Act (CPA), RCW Chapter 19.86.

123. Plaintiff and members of the Class are "persons" within the meaning of RCW 19.86.010(1).

124. Timberland Bank is a "person" within the meaning of RCW 19.86.010(1).

125. Timberland Bank's common course of conduct alleged above is unfair and deceptive and had, and continues to have, the capacity to deceive a substantial portion of the public.

FIRST AMENDED CLASS ACTION COMPLAINT - 17
3:22-cv-05385-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

126. Timberland Bank's policies and practices are deceptive and unfair because Timberland Bank misleadingly and actively omits material facts and deceptively misrepresents its OD Fee practices, including in its own account documents.

127. Timberland Bank's conduct was deceptive. By failing to honestly disclose its true OD Fee practices and policies to its customers, Timberland Bank made affirmative misrepresentations and omissions of material fact, and thus, engaged in deceptive acts or practices.

128. Timberland Bank's conduct was also unfair. Timberland Bank's practice of charging OD Fees on APPSN transactions were and are likely to cause substantial injury to consumers. Consumers could not reasonably avoid these OD Fees which were not outweighed by countervailing benefit.

129. Timberland Bank's common course of unfair and deceptive conduct occurred in trade or commerce and impact the public interest because Timberland Bank is in the business of providing financial services to tens of thousands of consumers in Washington. Thousands of Washingtonians have been and continue to be affected by Timberland Bank's unfair and deceptive acts and practices.

130. Timberland Bank's common course of conduct caused injury to the business or property of Plaintiff and the Class.

131. Plaintiff and the Class have been damaged in amounts to be determined at trial and, under RCW 19.86.090, Plaintiff and the Class are entitled to recover such damages, including interest thereon, as well as three times actual damages (up to $25,000.00), attorneys' fees and costs.

FIRST AMENDED CLASS ACTION COMPLAINT - 18
3:22-cv-05385-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

132. Under RCW 19.86.090, Plaintiff and the Class are also entitled to an order enjoining Timberland Bank from engaging in the illegal acts and practices described above.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff and members of the Class demand a jury trial on all claims so triable and judgment as follows:

    A.    An order certifying that this action may be maintained as a class action, that Plaintiff be appointed Class Representative and that Plaintiff's counsel be appointed Class Counsel;

    B.    Declaring Defendant's OD Fee policies and practices to be wrongful, unfair, unconscionable, and in breach of contract;

    C.    Ordering Defendant to immediately cease the wrongful conduct set forth above and enjoining Timberland Bank from conducting business via the unlawful and unfair business acts and practices complained of herein;

    D.    Restitution of all wrongful OD Fees paid to Defendant by Plaintiff and members of the Class as a result of the wrongs alleged herein in an amount to be determined at trial;

    E.    Actual and exemplary damages in an amount to be determined at trial;

    F.    Pre-judgment interest at the maximum rate permitted by applicable law;

    G.    Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law;

    H.    Granting leave to amend these pleadings to conform to the evidence produced at trial; and

    I.    Granting such other relief as the Court deems just and proper.

FIRST AMENDED CLASS ACTION COMPLAINT - 19
3:22-cv-05385-BHS

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

| | | |
|---|---|---|
| 1 | Dated: June 24, 2022 | Respectfully submitted, |
| 2 | | TOUSLEY BRAIN STEPHENS PLLC |
| 3 | | By: s/ *Kim D. Stephens* |
| | | Kim D. Stephens, P.S. WSBA #11984 |
| 4 | | s/ *Cecily C. Jordan* |
| | | Cecily C. Jordan, WSBA #50061 |
| 5 | | 1200 Fifth Avenue, Suite 1700 |
| | | Seattle, WA 98101 |
| 6 | | Telephone: (206) 682-5600 |
| | | kstephens@tousley.com |
| 7 | | cjordan@tousley.com |
| 8 | | Jeffrey D. Kaliel, *Admitted Pro Hac Vice* |
| | | jkaliel@kalielpllc.com |
| 9 | | Sophia Goren Gold, *Admitted Pro Hac Vice* |
| 10 | | sgold@kalielpllc.com |
| | | KALIELGOLD PLLC |
| 11 | | 1100 14th Street NW, 4th Fl. |
| | | Washington, D.C. 20005 |
| 12 | | Telephone: (202) 350-4783 |
| 13 | | |
| 14 | | *Attorneys for Plaintiff and the Putative Class* |

FIRST AMENDED CLASS ACTION COMPLAINT - 20
3:22-cv-05385-BHS

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992